UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS O. ZALEK,                         :
                                         :
       Plaintiff                         :
                                         :  CIVIL NO. 3:CV-05-2368
       -vs-                              :
                                         :  (Judge Kosik)
                                         :
LINDA S. McMAHON,                        :
Acting Commissioner of Social Security,  :
                                         :
       Defendant                         :

# **MEMORANDUM**

    Before the court is a dispute concerning a decision by the Commissioner of Social Security denying the plaintiff's claims for supplemental security income (SSI) and disability insurance benefits (DIB).  The record is being reviewed pursuant to 42 U.S.C. § 405(g) to determine whether there is substantial evidence to support the Commissioner's decision.  The plaintiff filed a complaint in this district on November 14, 2005.  The matter was assigned to United States Magistrate Judge Malachy E. Mannion and appropriate briefs were filed.  In a Report and Recommendation filed September 20, 2006, the Magistrate Judge found that the Commissioner's decision was supported by substantial evidence and recommended that the plaintiff's appeal be denied.  The plaintiff filed objections to the Magistrate Judge's Report and Recommendation.  The defendant filed a brief in response.  For the reasons that follow, we will adopt the Report and Recommendation of the Magistrate Judge and affirm the findings of the Commissioner.

## I.   BACKGROUND

Magistrate Judge Mannion provided a thorough recitation of the facts of the claim in his Report and Recommendation. Accordingly, we will not restate them here. Rather, we turn to plaintiff, Thomas Zalek's ("Plaintiff") objections to the Magistrate Judge's Report and Recommendation.

On September 20, 2006, Magistrate Judge Mannion issued a Report and Recommendation wherein he suggested that Plaintiff's appeal of the decision of the Commissioner be denied.  (Doc. 16).   Plaintiff's objections include six numbered challenges to the Report and Recommendation:

> 1. The Plaintiff objects to the Magistrate's finding that the (sic) Dr. Yucha's opinion in March of 2002 that it would advantageous for the Plaintiff to get a job that is not stressful to his neck or low back means that the Plaintiff is not disabled under Step 5 of the sequential evaluation.
>
> 2. The Plaintiff objects to the Magistrate's finding that there was no significant spinal stenosis as stated by Dr. Wolf when, in fact, the 2002 MRI noted moderate to severe stenosis at multiple levels and the 2004 MRI noted no significant change since the 2002 MRI.
>
> 3. The Plaintiff objects to the Magistrate's finding that the Plaintiff could stand or walk six hours in an eight hour day when Dr. Wolf opined that the Plaintiff could only stand or walk two hours in an eight hour day.
>
> 4. The Plaintiff objects to the Magistrate's finding that Dr. Wolf's opinion that the Plaintiff was not a surgical candidate meant the Plaintiff was capable of returning to work.
>
> 5. The Plaintiff objects to the Magistrate's finding that the Plaintiff did not have a positive straight leg raise test when Dr. Wolf found pain on the straight leg raise test at 90 degrees even though the straight leg raise test is allegedly not positive unless it reproduces pain at less than 60 degrees.

>6. The Plaintiff objects to the Magistrate's finding that the Plaintiff was not credible when, in fact, the medical evidence supported his testimony.

(Plaintiff's Objections, Doc. 17).

## II.   STANDARD OF REVIEW

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the Report to which objections are made. 28 U.S.C. §636(b)(1)(C); *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.3. Although our review is *de novo*, we are permitted by statute to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

When a claimant appeals from a final decision by the Commissioner of the Social Security Administration, the district court should uphold the Commissioner's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Stunkard v. Secretary of Health and Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Plummer*, 186 F.3d at 427. It is less than a preponderance of the evidence but more than a mere scintilla. *Id.*

## III.   DISCUSSION

### A.   Social Security Evaluation Process

A five-step evaluation process is used to determine whether a person is eligible for

disability benefits. *See* 20 C.F.R. § 404.1520. If it is found that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further beyond that step in the sequence. 20 C.F.R. § 404.1520. The first step of the process requires a claimant to establish that he has not engaged in "substantial gainful activity." *See* 20 C.F.R. § 404-1520. The second step involves a determination of whether the claimant has a severe impairment. At the third step, the Commissioner evaluates whether the claimant's impairments or combination of impairments meet or equal those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the claimant's impairments do not meet or equal a listed impairment, the Commissioner must continue on to the fourth step in the sequential evaluation process and consider whether the claimant has the residual functional capacity (RFC) to perform past relevant work (PRW). If the claimant establishes that he is unable to perform PRW, then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. *See* 20 C.F.R. § 404.1520(a). This is the final step in the evaluation of a claimant's disability.

### B. ALJ's Findings

In applying the evaluation process to the facts of this case, the ALJ found that: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability;[1]

---

[1] *See* R. 18; Finding 2.

(2) Plaintiff's impairments are severe within the meaning of the Regulations;[2] (3) none of Plaintiff's impairments are of sufficient severity to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4;[3] (4) Plaintiff's assertions regarding his limitations were not totally credible;[4] (5) Plaintiff has the RFC to perform a significant range of light work;[5] (6) Plaintiff's is unable to perform any of his PRW;[6] (7) there are a significant number of jobs in the national economy that Plaintiff can perform;[7] and, (8) Plaintiff has not been under a "disability" as defined in the Social Security Act at any time through the date of the decision.[8]

### C.   Analysis Of Plaintiff's Objections

Plaintiff challenges the Report and Recommendation in six objections. He simultaneously argues that the ALJ afforded too much and too little weight to the various opinions of Plaintiff's treating physicians. He contends that the ALJ and the Magistrate Judge erred in their interpretations of the findings of objective and subjective medical test. Finally, Plaintiff objects to the Magistrate Judge's decision that substantial evidence supports the ALJ's determination of Plaintiff's credibility. We will review Plaintiff's

---

[2]   *See* R. 18; Finding 3.

[3]   *See* R. 18; Finding 4.

[4]   *See* R. 18; Finding 5.

[5]   *See* R. 19; Finding 11.

[6]   *See* R. 18; Finding 7.

[7]   *See* R. 19; Finding 12.

[8]   *See* R. 19; Finding 13.

objections in the order he presented them.

### 1. Weight Afforded Dr. Yucha's Opinion Regarding Employment

Plaintiff takes exception with the ALJ's reliance upon a March 2002 statement by a treating physician, Dr. Thomas Yucha, that he "told [Plaintiff] that it would be advantageous to get a job that is not stressful to his neck or law back." (R. 232). Plaintiff complains that the opinion was offered before a September 2002 MRI that showed objective indicators of injury. He further asserts that Dr. Yucha's report was not entitled to significant weight as it was offered fifteen months prior to Plaintiff's amended onset date of June 30, 2003. Finally, Plaintiff suggests that if Dr. Yucha's determination was afforded significant weight, it should be interpreted as an opinion that Plaintiff was limited to sedentary work. Plaintiff further suggests that if he were limited to sedentary work, the Commissioner should then have used the next higher age category in the Medical Vocational Guideline Rules ("Grid Rules") given Plaintiff's "borderline situation" as a 49 year old. (Brief, Doc. 17 at p. 2). Evaluated as a 50 year old, the Grid Rules would support a finding that Plaintiff is disabled.

This court agrees with the Magistrate Judge that the ALJ's decision to afford significant weight to Dr. Yucha's March 2002 statement is supported by substantial evidence. The fact that Plaintiff amended his onset date from June 8, 2000, to June 30, 2003, when he filed his brief with the Magistrate Judge, does not render the ALJ's decision erroneous. Dr. Yucha's statement was supported by the objective tests available as well as his examination of Plaintiff. According to the office note, Dr. Yucha reviewed cervical x-rays that revealed a narrowing of the C4-5 and C5-6 interspaces. (R. 233). Plaintiff complained of lumbar problems, as well as cervical spine pain that radiated down his right

arm to the fingers. *Id.* The lone abnormality reveled upon physical examination was a slight decrease in range of motion. *Id.* Dr. Yucha's statement regarding Plaintiff's choice of work, therefore, was supported by the evidence he collected upon examination of Plaintiff.

There is no merit to Plaintiff's insinuation that Dr. Yucha's comment in March of 2002 is rendered useless in light of a subsequent MRI. Plaintiff's complaints to Dr. Yucha in March of 2002 primarily concerned his cervical spine and, to a lesser extent, lumbar pain, while that later medical records cited by Plaintiff almost exclusively concern treatment for his lumbar spine. We need not conjecture as to whether Plaintiff's lumbar spine somehow deteriorated dramatically between the March 2002 office visit and the September MRI. It is sufficient to note that the reports of Plaintiff's other treating physicians subsequent to March 2002, do not evidence any significant injury or limitations that are inconsistent with Dr. Yucha's March 5, 2002, report. In a January 16, 2003, report, Dr. Steven Wolf, noted that the lumbar MRI revealed a disc protrusion at L4-5 with degenerative disc disease. (R. 162). Physical examination of Plaintiff revealed relatively few abnormalities. Plaintiff had right buttock pain during a straight leg test of the right leg at ninety degrees, and some tests revealed low right back pain. *Id.* The report of Plaintiff's May 17, 2004, MRI, concluded that Plaintiff did not suffer from any focal herniation in his lumbar spine. (R. 152). The two subsequent MRIs and Dr. Wolf's physical exam belie Plaintiff's claim that Dr. Yucha's March 5, 2002, report is inconsistent with subsequent medical history.

We will not analyze Plaintiff's claim that Dr. Yucha could have intended to convey that Plaintiff be limited to sedentary work and, if so, Plaintiff should be bumped up one age

group in the Grid Rules and found to be disabled. Dr. Yucha offered no such opinion and the ALJ held that Plaintiff was capable of performing a full range of light work. (*See* Decision, R. 19; Finding 12). This court need not entertain Plaintiff's naked speculation. We concur with Magistrate Judge Mannion that the ALJ's decision to afford significant weight to Dr. Yucha's March 5, 2002, statement is supported by substantial evidence.

### 2. Weight Afforded Dr. Wolf's Opinion Of No Significant Spinal Stenosis

Plaintiff's second numbered objection challenges that the Magistrate Judge erred in recommending that substantial evidence supports the ALJ's reliance upon Dr. Wolf's August 25, 2004, report. In that report, Dr. Wolf wrote that Plaintiff did not have significant spinal stenosis. Plaintiff claims that the 2002 and 2004 MRI reports show that he suffered from moderate to severe spinal stenosis. Plaintiff's challenge to Dr. Wolf's opinion constitutes the second in as many objections in which he assigns the ALJ blame for an error that he alleges was made by one of his own treating physicians. He then asks this court to conclude that the ALJ should have afforded less weight to the opinion of the treating physician. We will not do so.

Dr. Wolf's office note does not contradict the objective findings revealed by the two MRIs. Plaintiff's assertions regarding the 2002 and 2004 MRIs are partially correct. The September 2002 MRI showed moderate stenosis at one level of the lumbar spine and severe left neural foraminal stenosis at another level. (R. 217). The May 17, 2004, MRI, however, noted only mild central canal stenosis at one level. (R. 152). Notably, the stenosis viewed in the latter MRI involved an entirely new disc. Dr. Wolf's office note, dated four months after the second lumbar MRI, indicated that Plaintiff did not have

"significant spinal stenosis." (R. 267).  That opinion is consistent with the report of the physician who interpreted the 2004 MRI.  Plaintiff's objection that Dr. Wolf's report is contradicted by objective findings is without merit.  We agree with the Magistrate Judge that substantial evidence supports the ALJ's decision to afford weight to Dr. Wolf's August 25, 2004, report.[9]

### 3. ALJ's Finding That Plaintiff Can Stand Or Walk Six Hours

After arguing that the ALJ afforded too much weight to Dr. Wolf's suggestion that Plaintiff had no significant spinal stenosis, Plaintiff's next objection challenges that the ALJ did not afford sufficient weight to Dr. Wolf's opinion as to Plaintiff's physical limitations. Specifically, Plaintiff asserts that Dr. Wolf opined that the former could stand or walk only two hours in an eight-hour day.  The ALJ concluded that Plaintiff could stand or walk six hours in an eight-hour day.  Plaintiff suggests, "if Dr. Wolf's references to no spinal stenosis . . . are a misprint and Dr. Wolf agreed that the Plaintiff did, in fact, have moderate to severe spinal stenosis that would explain his restriction to two hours standing or walking." (Brief, Doc. 17, p. 4).

---

[9] It is also evident that Plaintiff exaggerated the significance of the ALJ's reliance upon the finding of no significant spinal stenosis.  Plaintiff argued that ". . . it seems clear that the Magistrate's findings supporting the [ALJ's] denial are based principally on Dr. Wolf's statement that the Plaintiff had no spinal stenosis and not on the objective MRI's which document moderate to severe spinal stenosis." (Brief, Doc. 17, p. 3).  A review of the ALJ's decision reveals that the ALJ referenced the lack of severe spinal stenosis in only one sentence within a lengthy paragraph describing the medical evidence contradicting Plaintiff's claim of disability. (R. 16). In the very next sentence, the ALJ summarized the 2004 MRI report, noting that it showed "mild central canal stenosis" at L2-3. *Id.* The ALJ's reference to Dr. Wolf's comments regarding spinal stenosis cannot be transformed into the principal basis for a negative disability determination.

Plaintiff once again asks this court to speculate as to the meaning of a treating physician's opinion. He now suggests that Dr. Wolf's opinion that there was no severe spinal stenosis was a typographical mistake. Plaintiff provides no evidence to support his suggestion that Dr. Wolf's opinion regarding Plaintiff's limitations in standing or walking could have been based upon the finding of moderate to severe spinal stenosis. As noted above, Dr. Wolf clearly wrote that Plaintiff had no severe spinal stenosis. That opinion was consistent with the 2004 MIR report. There is no merit to Plaintiff's argument that the ALJ should have seen Dr. Wolf's opinion as a "misprint."

We now turn to the ALJ's decision to afford little weight to Dr. Wolf's opinion as to Plaintiff's ability to stand or walk. In considering a claim for disability benefits, greater weight is to be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant. *See Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *citing*, *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir.1999); *citing*, *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985). Opinions found in "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason*, 994 F.2d at 1065.

In the instant case, the record includes several office notes and reports authored by Dr. Wolf that conflict with the opinion that Plaintiff was limited to standing or walking for only two hours. The ALJ referred to those records to support his decision to afford Dr.

Wolf's opinion only partial weight. In determining that the ALJ's decision is supported by substantial evidence, the Magistrate Judge referenced that Dr. Wolf's January 16, 2003, report found Plaintiff to have a normal gait, intact reflexes in his extremities, normal range of motion in his extremities and cervical spine, and normal 5/5 muscle strength in all extremities. (R. 162). In a May 13, 2004, report, Dr. Wolf noted that while Plaintiff's chief complaint was that his right leg felt weaker than his left, physical examination revealed that Plaintiff's right leg was fine. (R. 157). On more than one occasion, Dr. Wolf told Plaintiff that he was not a candidate for surgery. (R. 162 and 246).

Other medical records support the ALJ's decision to afford Dr. Wolf's opinion partial weight. The May 17, 2004, MRI report concluded that Plaintiff did not suffer from any herniated discs. (R. 152). Another treating physician, Dr. DeAngelo, opined in a September 28, 2004, correspondence to Dr. Wolf that Plaintiff had an antalgic gait but did not need assistance walking. (TR. 265). Moreover, Dr. Wolf's opinion as to Plaintiff's limitations appeared in a check-the-box form report. Opinions contained in such forms generally are not entitled to significant weight. *See Mason*, 994 F.2d at 1065 (holding opinions found in "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"). We agree with Magistrate Judge Mannion that substantial evidence supports the ALJ's decision to afford only partial weight to Dr. Wolf's opinion as to Plaintiff's limitations.

### 4. Weight Afforded Dr. Wolf's Opinion That Plaintiff Is Not A Surgical Candidate

Plaintiff's fourth objection again challenges that the ALJ afforded too much weight to one of Dr. Wolf's opinions and asks this court to reverse the decision of the

Commissioner on the basis of unsupported conjecture. Plaintiff suggests that Dr. Wolf's opinion that Plaintiff was not a candidate for back surgery may have been based upon the fact that ". . . he had too many levels in his cervical and lumbar spine with moderate to severe stenosis to surgically repair them all." (Brief, Doc. 17, p. 4). Plaintiff claims that the ALJ afforded too much weight to that opinion when reaching the decision on Plaintiff's work limitations.

This objection relates to the claim that he in awkwardly asserted in the third objection, that substantial evidence does not support the ALJ's decision that Plaintiff can pursue employment that required him to stand or walk up to six hours in an eight-hour workday. We previously ruled that the ALJ's decision regarding Plaintiff's physical limitations is supported by substantial evidence. We will not revisit the issue here on the basis of Plaintiff's speculation as to Dr. Wolf's unstated motivations for opining that Plaintiff should not have surgery.

### 5. Plaintiff's Straight Leg Test

Plaintiff objects to the "Magistrate Judge's finding that the Plaintiff did not have a positive straight leg test." (Objections, Doc. 17, p. 2). Plaintiff appears to challenge the Magistrate Judge's determination that substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet or equal a listed impairment for disorders of the spine. Plaintiff disagrees with Magistrate Judge Mannion's conclusion that a straight leg test performed by Dr. Wolf that produced pain at 90 degrees was not a positive straight leg test. The Magistrate Judge cited a medical text that defined a positive test as one that produced pain at less than sixty degrees. Plaintiff counters that another source defines a positive test as one where pain is produced at less than eighty degrees. Plaintiff admits

that under either criteria, Plaintiff's straight leg test would still be negative. He concludes, however, that ". . . Dr. Wolf would not have made note of the positive finding of 90 degrees if it was not significant." (Brief, Doc. 17, p. 5).

Plaintiff's objection is nonsensical. He criticizes the Magistrate Judge's finding only to acknowledge that the Magistrate Judge's interpretation of Plaintiff's straight leg test is accurate. He then concludes, without citing any precedent, that a negative straight leg test that produces pain at ninety degrees is significant. Plaintiff neglects to argue how the "significant" result should have altered the ALJ's decision and the Magistrate Judge's Report and Recommendation. The objection is without merit.

### 6. ALJ's Determination Of Plaintiff's Credibility

Plaintiff objects that the Magistrate Judge erred in accepting the ALJ's determination of Plaintiff's credibility. Plaintiff contends that his testimony would be credible if Dr. Wolf's statement that Plaintiff did not have severe spinal stenosis was not afforded undue weight. He further contends that "if the 2002 and 2004 MRIs are accepted as objective evidence that the Plaintiff has moderate to significant spinal stenosis, his testimony becomes well supported by medical evidence and therefore credible." (Brief, Doc. 17, p. 5).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Symptoms, such as pain, shortness of breath, fatigue, *et cetera*, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which

results in such symptoms is found, the ALJ is to determine their impact on the claimant's ability to work. *Id.* at (c). In so doing, the medical evidence of record is considered along with the claimant's statements. *Id.* Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding his symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p at 4.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000) (internal citations omitted). "[T]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). An ALJ may find testimony lacks credibility, but he must "give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Id.*

In this case the MRI reports and the reports of Plaintiff's treating physicians do not

support Plaintiff's subjective complaints. The ALJ appropriately indicated which evidence he rejected and which he relied upon as the basis for his credibility determination. (*See* Decision, R. 15). We see no need to restate that evidence here as it was discussed at length in this memorandum, in the Magistrate Judge's Report and Recommendation, and in the ALJ's Decision. Moreover, we will not revisit the basis for Plaintiff's argument, that the ALJ afforded too much weight to the Dr. Wolf's statement that Plaintiff did not have severe spinal stenosis. Finally, there is no basis to the Plaintiff's assertion that the MRI reports support his subjective complaints. The 2004 MRI revealed only mild spinal stenosis at one level and the reviewing radiologist saw no focal herniation. The Magistrate Judge did not err in finding that substantial evidence supports the ALJ's determination of Plaintiff's credibility.

## IV.    CONCLUSION

We agree with Magistrate Judge Mannion's conclusion that the decision of the Commissioner is supported by substantial evidence. Plaintiff's objections to the Report and Recommendation are without merit. The Commisioner's decision will not be disturbed. Because we find no merit to Plaintiff's objections, we will adopt the recommendation of the Magistrate Judge that Plaintiff's appeal be denied. An appropriate order is attached.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS O. ZALEK, :
:
      Plaintiff :
: CIVIL NO. 3:CV-05-2368
  -vs- :
: (Judge Kosik)
:
LINDA S. McMAHON, :
Acting Commissioner of Social Security, :
:
      Defendant :

## ORDER

AND NOW, this 23rd day of March, 2007, IT IS HEREBY ORDERED THAT:

(1) The Report and Recommendation of Magistrate Judge Malachy E. Mannion (Doc. 16) dated September 9, 2006, is **ADOPTED**;

(2) the plaintiff's appeal is **DENIED**;

(3) the decision of the Commissioner is **AFFIRMED**; and,

(4) the Clerk of Court is directed to **CLOSE** this case and to forward a copy of this Memorandum and Order to the Magistrate Judge.

                                                  s/Edwin M. Kosik
                                                United States District Judge